**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

|  |  |  |
|---|---|---|
| **MONUMENT PEAK VENTURES, LLC,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | **JURY TRIAL DEMANDED** |
| **v.** | § | |
| | § | |
| **ACER INC. AND** | § | **C.A. NO. 6:21-cv-01379** |
| **ACER AMERICA CORPORATION,** | § | |
| | § | |
| **Defendants.** | § | |
| | § | |

## PLAINTIFF'S COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Monument Peak Ventures, LLC ("MPV") files this Complaint against Defendants Acer Inc. ("AI") and Acer America Corporation ("AAC") (collectively Acer Inc. and Acer America Corporation are referred to as "Defendants," "Acer Group," or "Acer") for infringement of U.S. Patent No. 6,904,451 (the "'451 patent"), U.S. Patent No. 6,985,158 (the "'158 patent"), U.S. Patent No. 7,233,684 (the "'684 patent"), U.S. Patent No. 7,444,017 (the "'017 patent"), and U.S. Patent No. 8,847,972 (the "'972 patent") (collectively, the "Asserted Patents").

## THE PARTIES

1. Monument Peak Ventures, LLC is a Texas limited liability company, with a principal place of business in Allen, TX.

2. On information and belief, Acer Inc. is a corporation organized and existing under the laws of Taiwan with a principal place of business at 8F., No.88, Sec. 1, Xintai 5th Rd., Xizhi Dist., New Taipei City 221, Taiwan. Acer Inc. owns 100% of the shares of Boardwalk Capital Holdings limited. Boardwalk Capital Holdings limited owns 100% of the shares of Acer American Holdings Corporation. Acer American Holdings Corporation owns 100% of the shares of

1

Gateway, Inc. Gateway, Inc. holds more than 10% of the shares of Acer America Corporation. Acer Inc. holds at least a 10% interest in and, on information and belief, a controlling interest in Acer America Corporation.

3.      On information and belief, Acer America Corporation is a corporation organized and existing under the laws of California. Acer America Corporation maintains a place of business in this District, including at 1394 Eberhardt Rd, Temple, Texas 76504.

4.      On information and belief, each Defendant, individually and with Acer Group, is engaged in making, using, selling, offering for sale, and/or importing, and/or induces its subsidiaries, affiliates, retail partners, and customers in the making, using, selling, offering for sale, and/or importing throughout the United States, including within this District, products, such as computers, projectors, and/or monitors, accused of infringement. Acer America Corporation operates in agency as part of the Acer Group. Acer America Corporation in agency with the Acer Group provides a distribution channel of infringing products within this District and the U.S. nationally. Further, Acer America Corporation regularly imports and inserts into the stream of commerce computers, such that infringing computers will be offered for sale and sold in this District and throughout the United States.

5.      On information and belief, Defendants are an interrelated group of companies which collectively comprise one of the largest electronics manufacturers in the United States.

6.      On information and belief, Defendants, individually, together, and/or in concert, participate in the design, development, manufacture, sale for importation into the United States, offers for sale for importation into the United States, importation into the United States, sale within the United States after importation, and offers for sale within the United States after importation, of computers, projectors, and/or monitors that infringe the Asserted Patents.

7.      Prior to the filing of the Complaint, MPV repeatedly attempted to engage Acer and/or its agents in licensing discussions related to the Asserted Patents. Acer's past and continuing sales of its devices i) willfully infringe the Asserted Patents and ii) impermissibly take the significant benefits of MPV's patented technologies without fair compensation to MPV.

8.      On information and belief, Defendants operate in agency with each other as a group. *See, e.g.*, https://www.acer-group.com/ag/en/TW/content/home ("Acer is one of the world's top ICT companies with a presence in more than 160 countries."). Acer induces its subsidiaries, affiliates, retail partners, and customers in the making, using, selling, offering for sale, and/or importing throughout the United States, including within this District, products, such as computers, projectors, and/or monitors, accused of infringement. Defendants provide a distribution channel of infringing products within this District and the U.S. nationally. Defendants, between and amongst themselves, purposefully direct the Accused Products into established distribution channels within this District and the U.S. nationally.

9.      On information and belief, Defendants maintain a corporate presence in the United States via at least its, U.S.-based sales subsidiaries including, Acer America Corporation. Acer America Corporation provides sales and distribution support in North America as part of the Acer Group and for related entities. Acer America Corporation is an agent of Acer Inc. At the direction and control of the Acer Group, U.S.-based sales subsidiaries including, Acer America Corporation imports infringing products, such as computers and projectors, into the United States and this District.

10.      On information and belief, Acer and its U.S.-based sales subsidiaries (which act as part of a global network of overseas sales and manufacturing subsidiaries on behalf of Acer) have operated as agents of one another and vicariously as parts of the same business group to work in

concert together and enter into agreements that are nearer than arm's length. For example, Acer Inc., alone and via at least the activities of its U.S.-based sales subsidiaries (e.g., Acer America Corporation), conducts business in the United States, including importing, distributing, and selling computers and projectors that incorporate devices, systems, and processes that infringe the Asserted Patents in Texas and this judicial district. *See Trois v. Apple Tree Auction Center, Inc.*, 882 F.3d 485, 490 (5th Cir. 2018) ("A defendant may be subject to personal jurisdiction because of the activities of its agent within the forum state…."); *see also Cephalon, Inc. v. Watson Pharmaceuticals, Inc.*, 629 F. Supp. 2d 338, 348 (D. Del. 2009) ("The agency theory may be applied not only to parents and subsidiaries, but also to companies that are 'two arms of the same business group,' operate in concert with each other, and enter into agreements with each other that are nearer than arm's length.").

11.     Through offers to sell, sales, imports, distributions, and other related agreements to transfer ownership of Defendants' electronics, such as computers, projectors, and/or monitors, with distributors and customers operating in and maintaining a significant business presence in the U.S. and/or its U.S. subsidiaries, Acer America Corporation, Defendants do business in the U.S., the state of Texas, and in this District.

## JURISDICTION AND VENUE

12.     This action arises under the patent laws of the United States, namely 35 U.S.C. §§ 271, 281, and 284-285, among others.

13.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

14.     Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(c) and 1400(b). Acer Inc. is a foreign entity and may be sued in any judicial district under 28 U.S.C. §

1391(c)(3). Acer America Corporation has committed acts of infringement in this District and has regular and established places of business in this District, including at least 1394 Eberhardt Rd, Temple, Texas 76504.

15.     This Court has general and specific personal jurisdiction over Defendants pursuant to due process and/or the Texas Long Arm Statute because, *inter alia*, (i) Defendants have done and continue to do business in Texas and (ii) Defendants have, directly and through intermediaries, committed and continue to commit acts of patent infringement in the State of Texas, including making, using, offering to sell, and/or selling accused products in Texas, and/or importing accused products into Texas, including by Internet sales and sales via retail and wholesale stores, inducing others to commit acts of patent infringement in Texas, and/or committing a least a portion of any other infringements alleged herein. Defendants have placed, and are continuing to place, infringing products into the stream of commerce, via an established distribution channel, with the knowledge and/or understanding that such products are sold in Texas, including in this District. Defendants have derived substantial revenues from its infringing acts occurring within Texas and within this District. Defendants have substantial business in this State and judicial district, including: (A) at least part of its infringing activities alleged herein; and (B) regularly doing or soliciting business, engaging in other persistent conduct, and/or deriving substantial revenue from infringing goods offered for sale, sold, and imported, and services provided to Texas residents vicariously through and/or in concert with its alter egos, intermediaries, agents, distributors, importers, customers, subsidiaries, and/or consumers.

16.     This Court has personal jurisdiction over Defendants, directly or through intermediaries, distributors, importers, customers, subsidiaries, and/or consumers including its U.S.-based sales subsidiaries, e.g., Acer America Corporation. Through direction and control of

such subsidiaries, Defendants have committed acts of direct and/or indirect patent infringement within Texas, and elsewhere within the United States, giving rise to this action and/or has established minimum contacts with Texas such that personal jurisdiction over Defendants would not offend traditional notions of fair play and substantial justice. Acer America Corporation is controlled by Acer Inc. The primary business of Acer America Corporation is the marketing and sale of electronic products in the United States. Acer Inc. has a controlling ownership interest in Acer America Corporation and maintains more than half of the voting rights for such subsidiaries as its basis for control. Upon information and belief, Acer Inc. compensates Acer America Corporation for its sales support services in the United States. As such, Acer Inc. has a direct financial interest in its U.S.-based subsidiaries, and vice versa.

17.    Personal jurisdiction is proper because Defendants have committed acts of infringement in this District. This Court has personal jurisdiction over Defendants because, *inter alia*, this action arises from activities Defendants purposefully directed towards the State of Texas and this District.

18.    Exercising personal jurisdiction over Defendants in this District would not be unreasonable given Defendants' contacts in this District, the interest in this District of resolving disputes related to products sold herein, and the harm that would occur to MPV.

19.    In addition, Defendants have knowingly induced and continue to knowingly induce infringement within this District by advertising, marketing, offering for sale and/or selling devices pre-loaded with infringing functionality within this District, to consumers, customers, manufacturers, distributors, resellers, partners, and/or end users, and providing instructions, user manuals, advertising, and/or marketing materials which facilitate, direct or encourage the use of infringing functionality with knowledge thereof.

20.     Personal jurisdiction also exists specifically over each of the Defendants because each, directly or through affiliates, subsidiaries, agents, or intermediaries, transacts business in this State or purposefully directed at this State (including, without limitation, retail stores including Best Buy and Walmart) by making, importing, offering to sell, selling, and/or having sold infringing products within this State and District or purposefully directed at this State or District.

21.     Personal jurisdiction also exists specifically over each of the Defendants because Defendants have overlapping executives, interlocking corporate structures, and close relationships as manufacturer, importer, and distributor of the products accused of infringement.

22.     To the extent any foreign Defendant is not subject to jurisdiction in any state's court of general jurisdiction, exercising jurisdiction over such Defendant in this State and this District would be consistent with due process and this State's long-arm statute and under national contacts in light of facts alleged in this Complaint.

23.     In addition, each of the Defendants, directly or through affiliates, subsidiaries, agents, or intermediaries, places infringing products into the stream of commerce knowing they will be sold and used in Texas, and economically benefits from the retail sale of infringing products in this State. For example, Defendants' products have been sold and are available for sale in this District at Best Buy and Walmart retail stores, and are also available for sale and offered for sale in this District through online retailers such as Best Buy, Walmart, and Amazon. Acer also advertises its infringing products and provides customer support of its infringing products to consumers in Texas and this District through its agent's websites. *See, e.g.*, https://store.acer.com/en-us/laptops; https://www.acer.com/ac/en/US/content/support.

24.   With respect to the Asserted Patents, the Accused Products include, but are not limited to computers, projectors, and/or monitors (e.g., Acer H6535i projector, Acer Swift 3 laptop, Acer

Predator XB1 monitor, Acer Predator 21X laptop, Acer Predator Gaming Monitors, Acer S Series Monitors, Acer H6502BD projector), as well as their components, and processes related to the same.

25. On information and belief, Acer controls or otherwise directs and authorizes all activities of its U.S.-based sales subsidiaries. Such directed and authorized activities include, the U.S. Subsidiaries' using, offering for sale, selling, and/or importing the Accused Products, their components, and/or products containing the same that incorporate the fundamental technologies covered by the Asserted Patents. The Defendants' U.S.-based sales subsidiaries are authorized to import, distribute, sell, or offer for sale the Accused Products on behalf of Defendants. For example, Acer researches, designs, develops, and manufactures computers and then directs its U.S.-based sales subsidiaries to import, distribute, offer for sale, and sell the Accused Products in the United States. *See, e.g., United States v. Hui Hsiung*, 778 F.3d 738, 743 (9th Cir. 2015) (finding that the sale of infringing products to third parties rather than for direct import into the U.S. did not "place [defendants'] conduct beyond the reach of United States law [or] escape culpability under the rubric of extraterritoriality"). Furthermore, Defendants' U.S.-based sales subsidiaries also administer, on behalf of Defendants, requests for service under and any disputes arising from Defendants' limited warranty of the Accused Products sold in the U.S., including in Texas and this judicial district. *See, e.g.*, https://static.acer.com/up/Resource/Acer/Docs/US/Standard%20Warranty/PanAm-20150126/20150129/Acer_CONS_WTY_DOC_1_YR_MICI_US_CA_MX_LA_46_AD148_008_090514.pdf. Thus, Defendants' U.S.-based sales subsidiaries conduct infringing activities on behalf of Defendants.

26. On information and belief, Defendants' U.S.-based sales subsidiaries corporate presence in the United States gives Acer substantially the business advantages that it would have enjoyed if it conducted its business through its own offices or paid agents in the state. Defendants' U.S.-based sales subsidiaries are authorized to import, distribute, sell, and offer for sale Defendants' products, including computers incorporating infringing devices and processes, on behalf of Defendants. For example, Defendants' U.S.-based sales subsidiaries operate within Defendants' global network of sales subsidiaries in North and South America, Europe, Asia, Australia, and the Middle East. In the U.S., including within the Western District of Texas, Defendants' computers, projectors, and/or monitors, which comprise infringing devices and processes, are imported, distributed, offered for sale, and sold.

27. Via Defendants' alter egos, agents, intermediaries, distributors, importers, customers, subsidiaries, and/or consumers maintaining a business presence, operating in, and/or residing in the U.S., Defendants' products, including products and processes accused of infringing the Asserted Patents, are or have been widely distributed and sold in retail stores, both brick and mortar and online, in Texas including within this judicial district. *See Litecubes, LLC v. Northern Light Products, Inc.*, 523 F.3d 1353, 1369-70 (Fed. Cir. 2008) ("[T]he sale [for purposes of § 271] occurred at the location of the buyer."); *see also Semcon IP Inc. v. Kyocera Corp.*, No. 2:18-cv-00197-JRG, 2019 WL 1979930, at *3 (E.D. Tex. May 3, 2019) (denying accused infringer's motion to dismiss because plaintiff sufficiently plead that purchases of infringing products outside of the United States for importation into and sales to end users in the U.S. may constitute an offer to sell under § 271(a)). For example, Defendants' computers are sold to end users by the U.S.-based subsidiaries, distributors, and customers online and at retail stores located throughout the Western District of Texas.

28.     On information and belief, Acer has placed and continues to place infringing products and/or products that practice infringing processes into the stream of commerce via established distribution channels comprising at least subsidiaries and distributors, such as Acer America Corporation, and customers such as Walmart, Best Buy, and Amazon, with the knowledge and/or intent that those products are and/or will be imported, used, offered for sale, sold, and continue to be sold in the United States and Texas, including in this judicial district. As a result, Acer has, vicariously through and/or in concert with its alter egos, agents, intermediaries, distributors, importers, customers, subsidiaries, and/or consumers, placed the Accused Products into the stream of commerce via established distribution channels with the knowledge and/or intent that those products were sold and continue to be sold in the United States and Texas, including in this judicial district.

29.     In the alternative, the Court has personal jurisdiction over Defendants under Federal Rule of Civil Procedure 4(k)(2), because the claims for patent infringement in this action arise under federal law, Defendants are not subject to the jurisdiction of the courts of general jurisdiction of any state, and exercising jurisdiction over Defendants is consistent with the U.S. Constitution.

30.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 as to Acer Inc. because, among other things, Acer Inc. is not a resident in the United States, and thus may be sued in any judicial district, including this one, pursuant to 28 U.S.C. § 1391(c)(3). *See In re HTC Corp.*, 889 F.3d 1349, 1357 (Fed. Cir. 2018) ("The Court's recent decision in *TC Heartland* does not alter" the alien-venue rule.).

## COUNT I
### (INFRINGEMENT OF U.S. PATENT NO. 6,904,451)

31.     Plaintiff incorporates paragraphs 1 through 30 herein by reference.

32.     MPV is the assignee of the '451 patent, entitled "Wireless Networked Presentation System," with ownership of all substantial rights in the '451 patent, including the right to exclude others and to enforce, sue, and recover damages for past and future infringements.

33.     The '451 patent is valid, enforceable, and was duly issued in full compliance with Title 35 of the United States Code. The '451 patent issued from U.S. Patent Application No. 09/723,041.

34.     Acer has and continues to directly and/or indirectly infringe (by inducing infringement) one or more claims of the '451 patent in this judicial district and elsewhere in Texas and the United States.

35.     On information and belief, Acer designs, develops, manufactures, assembles and markets computers, projectors, and/or monitors other devices constituting a presentation system for projecting audio and video in which the audio and video are under the central control of a wireless local area network. The Accused Products include an Acer projector (such as the Acer H6535i) that can operate wirelessly and project images externally as well as an Acer laptop (such as the Acer Swift 3) that contains a central processor that wirelessly transmits images, in real-time, to the projector.

36.     Acer directly infringes the '451 patent via 35 U.S.C. § 271(a) by making, offering for sale, selling, and/or importing those Accused Products, their components and processes, and/or products containing the same that incorporate the fundamental technologies covered by the '451 patent to, for example, its alter egos, agents, intermediaries, distributors, importers, customers, subsidiaries, and/or consumers. Furthermore, on information and belief, Acer sells and makes the Accused Products outside of the United States, delivers those products to its customers,

distributors, and/or subsidiaries in the United States, or in the case that it delivers the Accused Products outside of the United States it does so intending and/or knowing that those products are destined for the United States and/or designing those products for sale in the United States, thereby directly infringing the '451 patent. *See, e.g., Lake Cherokee Hard Drive Techs., L.L.C. v. Marvell Semiconductor, Inc.*, 964 F. Supp. 2d 653, 658 (E.D. Tex. 2013). Furthermore, Acer directly infringes the '451 patent through its direct involvement in the activities of its subsidiaries, including Acer America Corporation, including by selling and offering for sale the Accused Products directly to such subsidiaries and importing the Accused Products into the United States for such subsidiaries. Such subsidiaries conduct activities that constitute direct infringement of the '451 patent under 35 U.S.C. § 271(a) by making, offering for sale, selling, and/or importing those Accused Products. For example, and on information and belief, Acer offers for sale, sells, and imports the Accused Products within the U.S. to, for example, its distributors, customers, subsidiaries, importers, and/or consumers. Further, Acer is vicariously liable for this infringing conduct of its U.S.-based sales subsidiaries, e.g., Acer America Corporation, (under both the alter ego and agency theories) because, as an example and on information and belief, Acer and Acer America Corporation are essentially the same company, and Acer has the right and ability to control its subsidiaries infringing acts and receives a direct financial benefit from the infringement of its U.S.-based sales subsidiaries.

37.     For example, Acer infringes claim 1 of the '451 patent via the Accused Products. The Accused Products constitute the "presentation system having both video for projecting images for viewing by a user and audio for broadcasting sound in which both the audio and video are under central control over a wireless local area network" of claim 1. For example, the Acer

Projector Gateway system, which is included in devices such as the Acer H6535i projector, can project images and audio that are under central control over a wireless network, as shown below.





38.    The Accused Products include "digital projector having a wireless local area network connection for displaying the images external to the projector for viewing by the user, and for permitting real-time connection to devices wirelessly connected to the local area network." For example, Acer projectors (e.g., Acer H6535i projector) can operate wirelessly and project images externally, and permit real time connection to devices through the local area network, as show below.





https://www.acer.com/ac/en/US/content/model/MR.JRD11.00X

39.    The Accused Products include "a central processor having a wireless local area network connection which processor includes digital images which are transmitted in real-time to the projector for display, and which said processor permits real-time connection to devices wirelessly connected to the local area network; wherein the central processor further includes directing the display of images and audio being broadcast both in real-time, and for permitting real-time connection to devices wirelessly connected to the local area network." For example, an Acer laptop or tablet (e.g., Swift 3) contains a central processor that wirelessly transmits images, in real-time, to the projector. As the level 1 host, it permits real-time connection to devices wireless connected to the local area network and directs the display of images and audio being broadcast in real-time, as shown below.



Conference Control

The host control ensures the right of projection for the main presenter. The user is divided into two levels. The highest privilege is assigned to Level 1 and the lowest one is assigned as Level 2.

| Level 1 | Host | For the first user using EZCastPro to make the connection, all guests are allowed for projection only with the permission from the host. The conference control can only be controlled by the host to give the permission and assign the position of projection to the guest. |
| Level 2 | Guest | The user who is not the first one using EZCastPro may conduct the projection only with the permission from the host. |

https://global-download.acer.com/GDFiles/Document/User%20Manual/User%20Manual_Acer_1.0_A_A.pdf?acerid=636879552515736924&Step1=PROJECTOR&Step2=H%20SERIES&Step3=H6535I&OS=ALL&LC=en&BC=ACER&SC=PA_6

https://store.acer.com/en-us/swift-3-laptop-sf313-52-78w6

40.     The technology discussion above and the exemplary Accused Products provide context for Plaintiff's infringement allegations that each limitation of claim 1 is met.

41.     At a minimum, Acer has known of the '451 patent at least as early as the filing date of the Complaint. In addition, Acer has known of the '451 patent and its infringement at least as early as December 29, 2021, when it received correspondence from MPV providing notice of its infringement of the '451 patent. In addition, Acer has known of the '451 patent at least as early as March 28, 2019, when MPV contacted Acer regarding its patent portfolio, including the '451 patent. On information and belief, Acer examined the MPV patent portfolio, including the '451 patent.

42.     Prior to the filing of the Complaint, Acer knew or should have known of the '451 patent, and knew or should have known that they infringed the '451 patent's claims. Indeed, at a minimum, they exercised willful blindness to the existence of the '451 patent and took deliberately wrongful steps to ignore their infringement of the '451 patent.

43.     On information and belief, since at least the above-mentioned date when Acer was on notice of its infringement, Acer has actively induced, under U.S.C. § 271(b), distributors, customers, subsidiaries, importers, and/or consumers that import, purchase, or sell the Accused

Products that include or are made using all of the limitations of one or more claims of the '451 patent to directly infringe one or more claims of the '451 patent by using, offering for sale, selling, and/or importing the Accused Products. Since at least the notice provided on the above-mentioned date, Acer does so with knowledge, or with willful blindness of the fact, that the induced acts constitute infringement of the '451 patent. Acer intends to cause, and have taken affirmative steps to induce infringement by distributors, importers, customers, subsidiaries, and/or consumers by at least, *inter alia*, creating advertisements that promote the infringing use of the Accused Products, creating and/or maintaining established distribution channels for the Accused Products into and within the United States, manufacturing the Accused Products in conformity with U.S. laws and regulations, distributing or making available instructions or manuals for these products to purchasers and prospective buyers, testing and certifying features related to presentation systems in the Accused Products, and/or providing technical support, replacement parts, or services for these products to these purchasers in the United States. As noted above, this includes, but is not limited to, the collective willful blindness of the Acer Group, including their singular and collective refusal to investigate whether the Accused Products infringe the '451 patent.

44.    On information and belief, despite having knowledge of the '451 patent and knowledge that it is directly and/or indirectly infringing one or more claims of the '451 patent, Acer has nevertheless continued its infringing conduct and disregarded an objectively high likelihood of infringement. Acer's infringing activities relative to the '451 patent have been, and continue to be, willful, wanton, malicious, in bad-faith, deliberate, consciously wrongful, flagrant, characteristic of a pirate, and an egregious case of misconduct beyond typical infringement such that Plaintiff is entitled under 35 U.S.C. § 284 to enhanced damages up to three times the amount found or assessed.

16

45.     MPV has been damaged as a result of Acer's infringing conduct described in this Count. Acer is, thus, liable to MPV in an amount that adequately compensates MPV for Acer's infringements, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## COUNT II
### (INFRINGEMENT OF U.S. PATENT NO. 6,985,158)

46.     Plaintiff incorporates paragraphs 1 through 45 herein by reference.

47.     MPV is the assignee of the '158 patent, entitled "Method and System for Displaying an Image," with ownership of all substantial rights in the '158 patent, including the right to exclude others and to enforce, sue, and recover damages for past and future infringements.

48.     The '158 patent is valid, enforceable, and was duly issued in full compliance with Title 35 of the United States Code. The '158 patent issued from U.S. Patent Application No. 10/838,667.

49.     Acer has directly and/or indirectly infringed (by inducing infringement) one or more claims of the '158 patent in this judicial district and elsewhere in Texas and the United States.

50.     On information and belief, Acer designs, develops, manufactures, assembles and markets computers and monitors configured with Tobii Eye Tracking hardware and software. For example, Acer Predator XB1 Monitor and Acer Predator 21X laptop have this capability. The Accused Products include the Acer Predator XB1 Monitor and Acer Predator 21X laptop and other monitors or laptops with eye tracking capability. The Tobii Eye Tracking hardware and software determines the point of gaze of a human observer and sends a digital image to refine image details starting with data that corresponds to the determined point of gaze.

51.     Acer directly infringed the '158 patent via 35 U.S.C. § 271(a) by making, offering for sale, selling, and/or importing those Accused Products, their components and processes, and/or products containing the same that incorporate the fundamental technologies covered by the '158 patent to, for example, its alter egos, agents, intermediaries, distributors, importers, customers, subsidiaries, and/or consumers. Furthermore, on information and belief, Acer sells and makes the Accused Products outside of the United States, delivers those products to its customers, distributors, and/or subsidiaries in the United States, or in the case that it delivers the Accused Products outside of the United States it does so intending and/or knowing that those products are destined for the United States and/or designing those products for sale in the United States, thereby directly infringing the '158 patent. *See, e.g., Lake Cherokee Hard Drive Techs., L.L.C. v. Marvell Semiconductor, Inc.*, 964 F. Supp. 2d 653, 658 (E.D. Tex. 2013). Furthermore, Acer directly infringed the '158 patent through its direct involvement in the activities of its subsidiaries, including Acer America Corporation, including by selling and offering for sale the Accused Products directly to such subsidiaries and importing the Accused Products into the United States for such subsidiaries. Such subsidiaries conduct activities that constitute direct infringement of the '158 patent under 35 U.S.C. § 271(a) by making, offering for sale, selling, and/or importing those Accused Products. For example, and on information and belief, Acer offers for sale, sells, and imports the Accused Products within the U.S. to, for example, its distributors, customers, subsidiaries, importers, and/or consumers. Further, Acer is vicariously liable for this infringing conduct of its U.S.-based sales subsidiaries, e.g., Acer America Corporation, (under both the alter ego and agency theories) because, as an example and on information and belief, Acer and Acer America Corporation are essentially the same company, and Acer has the right and ability to

control its subsidiaries infringing acts and received a direct financial benefit from the infringement of its U.S.-based sales subsidiaries.

52.     For example, Acer infringed claim 15 of the '158 patent via the Accused Products. The Accused Products perform the "method for transmitting a compressed digital image to a display that is viewed by a human observer having a point of gaze" of claim 15. For example, Acer devices (e.g., Predator 21x laptop) transmit video game images to the display that is viewed by a user having a point of gaze, as shown below.



https://www.laptopmag.com/reviews/laptops/acer-predator-21x
https://www.acer.com/ac/en/US/content/predator-series-design/predator21x

53.     The Accused Products perform "sending first data of the digital image to fill all regions of the display with a minimum resolution level of image information." For example, Acer displays an initial scene (e.g., "first data of the digital image") shown on the entire display (e.g., "all regions of the display") with a minimum resolution to show the features of the video game, as shown below.



https://www.acer.com/ac/en/US/content/predator-series/predatorxb1
https://www.acer.com/ac/en/US/content/predator-series-design/predator21x

54.     The Accused Products perform "determining the point of gaze of the human observer." For example, Acer utilizes Tobii eye tracking to locate the user's eyes and determine gaze direction, as shown below.



https://www.tobii.com/siteassets/tobii-group/investor-relations/financial/carnegie-small-mid-cap-seminar---tobii-presentation---sept-2016.pdf/?v=1

20

55.     The Accused Products each perform "determining the point of gaze of the human observer." For example, the Accused Products calibrates gaze point calculations using multiple points on the screen, to better determine the gaze point of the observer, as shown below.



https://www.youtube.com/watch?v=N8SjPV-tK3o
https://www.acer.com/ac/en/US/content/predator-series/predatorxb1

56.     The Accused Products each perform "sending second data of said digital image to refine image details, starting with data that corresponds to said point of gaze and progressing outward away from said point of gaze. For example, the Accused Products send follow-data (e.g., "second data") to update (e.g., "refine") image details, the follow-data starting with data corresponding to the point on screen where the user is looking (e.g., "point of gaze") and supplying surrounding data to provide complete situational awareness (e.g., "progressing outward away from said point of gaze"), as shown below.



https://www.acer.com/ac/en/US/content/predator-series/predatorxb1

**Infinite Screen**

Keep an eye on your surroundings without ever moving your mouse. With infinite screen, the camera follows you as you look towards the edge of the screen, rotating to give you complete situational awareness.

In gaming, eye tracking re-envisions what's possible, allowing gamers to interact with their environments more seamlessly, interact with characters more realistically and even enhance immersion and user experience. Combined with curved displays, eye tracking creates groundbreaking immersive experiences. Simulator gamers, like those that play Elite Dangerous and Euro Truck Simulator 2, are able to look around freely in any direction without having to orient their character or vehicle in the same direction – the scene camera will orient itself based on the user's gaze and attention. This eye tracking implementation, called 'Infinite Screen', is one of many different ways Tobii is improving realism and immersion in PC gaming.

https://mb.cision.com/Main/11917/2068686/555742.pdf

57.     The technology discussion above and the exemplary Accused Products provide context for Plaintiff's infringement allegations that each limitation of claim 15 is met.

58.     At a minimum, Acer has known of the '158 patent and its infringement at least as early as September 8, 2019, when Acer received access to a data room providing detailed notice of its infringement of the '158 patent. In addition, Acer has known of the '158 patent at least as early as March 28, 2019, when MPV contacted Acer regarding its patent portfolio, including the '158 patent. On information and belief, Acer examined the MPV patent portfolio, including the '158 patent.

59.     As a result of the aforementioned notice, Acer knew or should have known of the '158 patent, and knew or should have known that they infringed the '158 patent's claims. Indeed, at a minimum, they exercised willful blindness to the existence of the '158 patent and took deliberately wrongful steps to ignore their infringement of the '158 patent.

60.     On information and belief, since at least the above-mentioned date when Acer was on notice of its infringement and until the expiration of the '158 patent, Acer actively induced, under U.S.C. § 271(b), distributors, customers, subsidiaries, importers, and/or consumers that

import, purchase, or sell the Accused Products that include or are made using all of the limitations of one or more claims of the '158 patent to directly infringe one or more claims of the '158 patent by using, offering for sale, selling, and/or importing the Accused Products. Since at least the notice provided on the above-mentioned date, Acer did so with knowledge, or with willful blindness of the fact, that the induced acts constitute infringement of the '158 patent. Acer intended to cause, and took affirmative steps to induce infringement by distributors, importers, customers, subsidiaries, and/or consumers by at least, *inter alia*, creating advertisements that promote the infringing use of the Accused Products, creating and/or maintaining established distribution channels for the Accused Products into and within the United States, manufacturing the Accused Products in conformity with U.S. laws and regulations, distributing or making available instructions or manuals for these products to purchasers and prospective buyers, testing and certifying features related to transmitting images after determining the point of gaze of a human observer and/or eye tracking in the Accused Products, and/or providing technical support, replacement parts, or services for these products to these purchasers in the United States. As noted above, this includes, but is not limited to, the collective willful blindness of the Acer Group, including their singular and collective refusal to investigate whether the Accused Products infringe the '158 patent.

61.     On information and belief, despite having knowledge of the '158 patent and knowledge that it was directly and/or indirectly infringing one or more claims of the '158 patent, Acer nevertheless continued its infringing conduct and disregarded an objectively high likelihood of infringement. Acer's infringing activities relative to the '158 patent were willful, wanton, malicious, in bad-faith, deliberate, consciously wrongful, flagrant, characteristic of a pirate, and

an egregious case of misconduct beyond typical infringement such that Plaintiff is entitled under 35 U.S.C. § 284 to enhanced damages up to three times the amount found or assessed.

62.     MPV has been damaged as a result of Acer's infringing conduct described in this Count. Acer is, thus, liable to MPV in an amount that adequately compensates MPV for Acer's infringements, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## COUNT III
### (INFRINGEMENT OF U.S. PATENT NO. 7,233,684)

63.     Plaintiff incorporates paragraphs 1 through 62 herein by reference.

64.     MPV is the assignee of the '684 patent, entitled "Imaging Method and System Using Affective Information," with ownership of all substantial rights in the '684 patent, including the right to exclude others and to enforce, sue, and recover damages for past and future infringements.

65.     The '684 patent is valid, enforceable, and was duly issued in full compliance with Title 35 of the United States Code. The '684 patent issued from U.S. Patent Application No. 10/304,127.

66.     Acer has and continues to directly and/or indirectly infringe (by inducing infringement) one or more claims of the '684 patent in this judicial district and elsewhere in Texas and the United States.

67.     On information and belief, Acer designs, develops, manufactures, assembles and markets computers and monitors to track eye movement of a user and process this information, including devices with Tobii Eye Tracking. The Accused Products include computers and monitors, such as the Acer Predator Gaming Monitors, that support eye tracking functionality.

68.     Acer directly infringes the '684 patent via 35 U.S.C. § 271(a) by making, offering for sale, selling, and/or importing those Accused Products, their components and processes, and/or products containing the same that incorporate the fundamental technologies covered by the '684 patent to, for example, its alter egos, agents, intermediaries, distributors, importers, customers, subsidiaries, and/or consumers. Furthermore, on information and belief, Acer sells and makes the Accused Products outside of the United States, delivers those products to its customers, distributors, and/or subsidiaries in the United States, or in the case that it delivers the Accused Products outside of the United States it does so intending and/or knowing that those products are destined for the United States and/or designing those products for sale in the United States, thereby directly infringing the '684 patent. *See, e.g., Lake Cherokee Hard Drive Techs., L.L.C. v. Marvell Semiconductor, Inc.*, 964 F. Supp. 2d 653, 658 (E.D. Tex. 2013). Furthermore, Acer directly infringes the '684 patent through its direct involvement in the activities of its subsidiaries, including Acer America Corporation, including by selling and offering for sale the Accused Products directly to such subsidiaries and importing the Accused Products into the United States for such subsidiaries. Such subsidiaries conduct activities that constitute direct infringement of the '684 patent under 35 U.S.C. § 271(a) by making, offering for sale, selling, and/or importing those Accused Products. For example, and on information and belief, Acer offers for sale, sells, and imports the Accused Products within the U.S. to, for example, its distributors, customers, subsidiaries, importers, and/or consumers. Further, Acer is vicariously liable for this infringing conduct of its U.S.-based sales subsidiaries, e.g., Acer America Corporation, (under both the alter ego and agency theories) because, as an example and on information and belief, Acer and Acer America Corporation are essentially the same company, and Acer has the right and ability to

control its subsidiaries infringing acts and receives a direct financial benefit from the infringement of its U.S.-based sales subsidiaries.

69.    For example, Acer infringes claim 21 of the '684 patent via the Accused Products. The Accused Products perform the "imaging method" of claim 21. For example, the Accused Products implement an imaging method to associate collected affective information with a given stream of images.

70.    The Accused Products perform "capturing a stream of images." For example, Acer's Predator monitors, which use the Tobii eye tracking hardware and software, capture a stream of images of the user, as show below.



Specifically, Acer products with integrated Tobii Eye Tracking announced today, include:

- Predator 21 X Curved Screen Gaming Notebook
- Predator Z27IT 27" Curved Screen Gaming Monitor
- Predator XB251HQT 24.5" Flat Screen Gaming Monitor
- Predator XB271HUT 27" Flat Screen Gaming Monitor

https://mb.cision.com/Main/11917/2068686/555742.pdf

71.    The Accused Products perform "collecting a stream of affective information during image capture." For example, the Acer Predator Monitors determine affective information (eye position, gaze point, etc.) during image capture, as shown below.



1   **An eye tracker** consists of cameras, projectors and algorithms.

2   The projectors create a pattern of near-infrared light on the eyes.

3   **The cameras** take high-frame-rate images of the user's eyes and the patterns.

4   The image processing **algorithms** find specific details in the user's eyes and reflections patterns.

5   Based on these details, mathematical algorithms calculate **the eyes' position and gaze point**, for instance on a computer monitor.

Gaze point

The Eye Tracker

https://www.tobii.com/siteassets/tobii-group/investor-relations/financial/carnegie-small-mid-cap-seminar---tobii-presentation---sept-2016.pdf/?v=1

72.    The Accused Products perform "associating the stream of affective information with the stream of images, wherein the stream of affective information comprises is examined to determine when relevant changes in affective information occur and the step of associating the affective information with the corresponding stream of images comprises associating data representing relevant changes in the affective information with the stream of images at a points in the stream of images that correspond to the occurrence of the relevant changes." For example, using the recorded affective information, the Tobii eye tracking algorithm used by the Acer Predator monitors determines when a relevant change occurs in the user's gaze and changes the "scene camera" view accordingly. The Tobii eye tracker scores changes in the affective information (eye gaze) to determine if a relevant change has occurred. If a relevant change is noted, the data is associated with the current point of the image stream of the user that corresponds with that relevant change, as show below.



Using the recorded affective information, the Tobii eye tracking algorithm determines when a relevant change occurs in the user's gaze and changes the "scene camera" view accordingly. The Tobii eye tracker scores changes in the affective information (eye gaze) to determine if a relevant change has occurred. If a relevant change is noted, the data is associated with the current point of the image stream of the user that corresponds with that relevant change.

https://www.tobii.com/siteassets/tobii-group/investor-relations/financial/carnegie-small-mid-cap-seminar---tobii-presentation---sept-2016.pdf/?v=1

In gaming, eye tracking re-envisions what's possible, allowing gamers to interact with their environments more seamlessly, interact with characters more realistically and even enhance immersion and user experience. Combined with curved displays, eye tracking creates groundbreaking immersive experiences. Simulator gamers, like those that play Elite Dangerous and Euro Truck Simulator 2, are able to look around freely in any direction without having to orient their character or vehicle in the same direction – the scene camera will orient itself based on the user's gaze and attention. This eye tracking implementation, called 'Infinite Screen', is one of many different ways Tobii is improving realism and immersion in PC gaming.

https://mb.cision.com/Main/11917/2068686/555742.pdf

73.   The technology discussion above and the exemplary Accused Products provide context for Plaintiff's infringement allegations that each limitation of claim 21 is met.

74.   At a minimum, Acer has known of the '684 patent at least as early as the filing date of the Complaint. In addition, Acer has known of the '684 patent and its infringement at least as early as December 29, 2021, when it received correspondence from MPV providing notice of its infringement of the '684 patent. In addition, Acer has known of the '684 patent at least as early as March 28, 2019, when MPV contacted Acer regarding its patent portfolio, including the '684 patent. On information and belief, Acer examined the MPV patent portfolio, including the '684 patent. Moreover, Acer has been on notice of the '684 patent as a result of previous lawsuits filed by the Plaintiff against competitors of Acer and other relevant market participants, such as Hitachi.

75.   Prior to the filing of the Complaint, Acer knew or should have known of the '684 patent, and knew or should have known that they infringed the '684 patent's claims. Indeed, at a minimum, they exercised willful blindness to the existence of the '684 patent and took deliberately wrongful steps to ignore their infringement of the '684 patent.

76.     On information and belief, since at least the above-mentioned date when Acer was on notice of its infringement, Acer has actively induced, under U.S.C. § 271(b), its distributors, customers, subsidiaries, importers, and/or consumers that import, purchase, or sell the Accused Products that include or are made using all of the limitations of one or more claims of the '684 patent to directly infringe one or more claims of the '684 patent by using, offering for sale, selling, and/or importing the Accused Products. Since at least the notice provided on the above-mentioned date, Acer does so with knowledge, or with willful blindness of the fact, that the induced acts constitute infringement of the '684 patent. Acer intends to cause, and has taken affirmative steps to induce infringement by its distributors, importers, customers, subsidiaries, and/or consumers by at least, *inter alia*, creating advertisements that promote the infringing use of the Accused Products, creating and/or maintaining established distribution channels for the Accused Products into and within the United States, manufacturing the Accused Products in conformity with U.S. laws and regulations, distributing or making available instructions or manuals for these products to purchasers and prospective buyers, testing and certifying features related to eye tracking in the Accused Products, and/or providing technical support, replacement parts, or services for these products to these purchasers in the United States. As noted above, this includes, but is not limited to, the collective willful blindness of the Acer Group, including their singular and collective refusal to investigate whether the Accused Products infringe the '684 patent.

77.     On information and belief, despite having knowledge of the '684 patent and knowledge that it is directly and/or indirectly infringing one or more claims of the '684 patent, Acer has nevertheless continued its infringing conduct and disregarded an objectively high likelihood of infringement. Acer's infringing activities relative to the '684 patent have been, and continue to be, willful, wanton, malicious, in bad-faith, deliberate, consciously wrongful, flagrant,

characteristic of a pirate, and an egregious case of misconduct beyond typical infringement such that Plaintiff is entitled under 35 U.S.C. § 284 to enhanced damages up to three times the amount found or assessed.

78.     MPV has been damaged as a result of Acer's infringing conduct described in this Count. Acer is, thus, liable to MPV in an amount that adequately compensates MPV for Acer's infringements, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

**COUNT IV**

(INFRINGEMENT OF U.S. PATENT NO. 7,444,017)

79.     Plaintiff incorporates paragraphs 1 through 78 herein by reference.

80.     MPV is the assignee of the '017 patent, entitled "Detecting Irises and Pupils in Images of Humans" with ownership of all substantial rights in the '017 patent, including the right to exclude others and to enforce, sue, and recover damages for past and future infringements.

81.      The '017 patent is valid, enforceable, and was duly issued in full compliance with Title 35 of the United States Code. The '017 patent issued from U.S. Patent Application No. 10/984,967.

82.     Acer has and continues to directly and/or indirectly infringe (by inducing infringement) one or more claims of the '017 patent in this judicial district and elsewhere in Texas and the United States.

83.     On information and belief, Acer designs, develops, manufactures, assembles and markets computers and monitors to track eye movement of a user and process this information, including with Tobii Eye Tacking. The Accused Products include computer and monitors, such as the Acer Predator Gaming Monitors, that support eye tracking functionality.

84.     Acer directly infringes the '017 patent via 35 U.S.C. § 271(a) by making, offering for sale, selling, and/or importing those Accused Products, their components and processes, and/or products containing the same that incorporate the fundamental technologies covered by the '017 patent to, for example, its alter egos, agents, intermediaries, distributors, importers, customers, subsidiaries, and/or consumers. Furthermore, on information and belief, Acer sells and makes the Accused Products outside of the United States, delivers those products to its customers, distributors, and/or subsidiaries in the United States, or in the case that it delivers the Accused Products outside of the United States it does so intending and/or knowing that those products are destined for the United States and/or designing those products for sale in the United States, thereby directly infringing the '017 patent. *See, e.g., Lake Cherokee Hard Drive Techs., L.L.C. v. Marvell Semiconductor, Inc.*, 964 F. Supp. 2d 653, 658 (E.D. Tex. 2013). Furthermore, Acer directly infringes the '017 patent through its direct involvement in the activities of its subsidiaries, including Acer America Corporation, including by selling and offering for sale the Accused Products directly to such subsidiaries and importing the Accused Products into the United States for such subsidiaries. Such subsidiaries conduct activities that constitute direct infringement of the '017 patent under 35 U.S.C. § 271(a) by making, offering for sale, selling, and/or importing those Accused Products. For example, and on information and belief, Acer offers for sale, sells, and imports the Accused Products within the U.S. to, for example, its distributors, customers, subsidiaries, importers, and/or consumers. Further, Acer is vicariously liable for this infringing conduct of its U.S.-based sales subsidiaries, e.g., Acer America Corporation, (under both the alter ego and agency theories) because, as an example and on information and belief, Acer and Acer America Corporation are essentially the same company, and Acer has the right and ability to

control its subsidiaries infringing acts and receives a direct financial benefit from the infringement of its U.S.-based sales subsidiaries.

85.    For example, Acer infringes claim 1 of the '017 patent via the Accused Products. The Accused Products, including the Acer Predator monitors perform "locating a plurality of candidate eyes within the image" of claim 1. For example, the Accused Products use Tobii eye tracking cameras to capture images and locate candidate eyes, as shown below.



https://www.tobii.com/siteassets/tobii-group/investor-relations/financial/carnegie-small-mid-cap-seminar---tobii-presentation---sept-2016.pdf/?v=1

86.    The Accused Products perform "finding pixels of said digital image having a predetermined characteristic and a predetermined association to respective said eyes, to provide pixels of interest." For example, Tobii eye tracking uses dark pupil corneal reflection to locate pixels comprising the pupil by measuring reflected light (the brightness of the pixel being the predetermined characteristic). An illuminator causes the pupils to be darker than the iris and the cornea, as shown below.



There are two different illumination setups that can be used with Pupil Center Corneal Reflection eye tracking: bright pupil eye tracking, where an illuminator is placed close to the optical axis of the imaging device causing the pupil to appear lit up (this is the same phenomenon that causes red eyes in photos), and dark pupil eye tracking, where an illuminator is placed away from the optical axis causing the pupil to appear darker than the iris.

https://www.tobiipro.com/learn-and-support/learn/eye-tracking-essentials/what-is-dark-and-bright-pupil-tracking/

Eye tracking has long been known and used as a method to study the visual attention of individuals. There are several different techniques to detect and track the movements of the eyes. However, when it comes to remote, non-intrusive eye tracking the most commonly used technique is pupil centre corneal reflection (PCCR). The basic concept is to use a light source to illuminate the eye causing highly visible reflections, and a camera to capture an image of the eye showing these reflections. The image captured by the camera is then used to identify the reflection of the light source on the cornea (glint) and in the pupil. We can then calculate a vector formed by the angle between the cornea and pupil reflections —the direction of this vector, combined with other geometrical features of the reflections, is then used to calculate the gaze direction.

https://www.tobiipro.com/learn-and-support/learn/eye-tracking-essentials/how-do-tobii-eye-trackers-work/

87.    The Accused Products perform "grouping said pixels of interest associated with each of said eyes into a plurality of different groups." For example, Tobii sorts the pixels of interest to left and right eyes, along with the pupil and cornea, as shown below.

Eye tracking has long been known and used as a method to study the visual attention of individuals. There are several different techniques to detect and track the movements of the eyes. However, when it comes to remote, non-intrusive eye tracking the most commonly used technique is pupil centre corneal reflection (PCCR). The basic concept is to use a light source to illuminate the eye causing highly visible reflections, and a camera to capture an image of the eye showing these reflections. The image captured by the camera is then used to identify the reflection of the light source on the cornea (glint) and in the pupil. We can then calculate a vector formed by the angle between the cornea and pupil reflections —the direction of this vector, combined with other geometrical features of the reflections, is then used to calculate the gaze direction.

https://www.tobiipro.com/learn-and-support/learn/eye-tracking-essentials/how-do-tobii-eye-trackers-work/

Placed on or within the machine interface and using the eye's reflection of near infrared light beams, eye tracking technology calculates data about the user; detecting presence, attention, and focus as well as the position of a person's eye and pupil size.

https://tech.tobii.com/technology/what-is-eye-tracking/

88.    The Accused Products perform "fitting parametric boundaries on each of said groups to define a plurality of detected eye features, said boundaries having a predefined uniform

shape and a size matched to a respective said group." For example, the Tobii eye tracker creates

3D eye models to set the boundaries for respective eye features, as shown below.



89.    The Accused Products perform "scoring each of said detected eye features as to a

geometric relationship between the respective one of said boundaries and said pixels of interest

associated with the respective said eye to provide respective eye feature scores." For example, the

pixels of interest are continuously scored by Tobii to determine if they have moved enough to

indicate the user is looking at different parts of the screen, as shown below.



https://www.tobii.com/siteassets/tobii-group/investor-relations/financial/carnegie-small-mid-cap-seminar---tobii-presentation---sept-2016.pdf/?v=1

In gaming, eye tracking re-envisions what's possible, allowing gamers to interact with their environments more seamlessly, interact with characters more realistically and even enhance immersion and user experience. Combined with curved displays, eye tracking creates groundbreaking immersive experiences. Simulator gamers, like those that play Elite Dangerous and Euro Truck Simulator 2, are able to look around freely in any direction without having to orient their character or vehicle in the same direction – the scene camera will orient itself based on the user's gaze and attention. This eye tracking implementation, called 'Infinite Screen', is one of many different ways Tobii is improving realism and immersion in PC gaming.

https://mb.cision.com/Main/11917/2068686/555742.pdf

90.     The technology discussion above and the exemplary Accused Products provide context for Plaintiff's allegations that each limitation of claim 1 is met.

91.     At a minimum, Acer has known of the '017 patent at least as early as the filing date of the Complaint. In addition, Acer has known of the '017 patent and its infringement at least as early as December 29, 2021, when it received correspondence from MPV providing notice of its infringement of the '017 patent. In addition, Acer has known of the '017 patent at least as early as March 28, 2019, when MPV contacted Acer regarding its patent portfolio, including the '017 patent. On information and belief, Acer examined the MPV patent portfolio, including the '017 patent.

92.     Prior to the filing of the Complaint, Acer knew or should have known of the '017 patent, and knew or should have known that they infringed the '017 patent's claims. Indeed, at a

minimum, they exercised willful blindness to the existence of the '017 patent and took deliberately wrongful steps to ignore their infringement of the '017 patent.

93.     On information and belief, since at least the above-mentioned date when Acer was on notice of its infringement, Acer has actively induced, under U.S.C. § 271(b), its distributors, customers, subsidiaries, importers, and/or consumers that import, purchase, or sell the Accused Products that include or are made using all of the limitations of one or more claims of the '017 patent to directly infringe one or more claims of the '017 patent by using, offering for sale, selling, and/or importing the Accused Products. Since at least the notice provided on the above-mentioned date, Acer does so with knowledge, or with willful blindness of the fact, that the induced acts constitute infringement of the '017 patent. Acer intends to cause, and has taken affirmative steps to induce infringement by its distributors, importers, customers, subsidiaries, and/or consumers by at least, *inter alia*, creating advertisements that promote the infringing use of the Accused Products, creating and/or maintaining established distribution channels for the Accused Products into and within the United States, manufacturing the Accused Products in conformity with U.S. laws and regulations, distributing or making available instructions or manuals for these products to purchasers and prospective buyers, testing and certifying features related to eye tracking in the Accused Products, and/or providing technical support, replacement parts, or services for these products to these purchasers in the United States. As noted above, this includes, but is not limited to, the collective willful blindness of the Acer Group, including their singular and collective refusal to investigate whether the Accused Products infringe the '017 patent.

94.     On information and belief, despite having knowledge of the '017 patent and knowledge that it is directly and/or indirectly infringing one or more claims of the '017 patent, Acer has nevertheless continued its infringing conduct and disregarded an objectively high

likelihood of infringement. Acer's infringing activities relative to the '017 patent have been, and continue to be, willful, wanton, malicious, in bad-faith, deliberate, consciously wrongful, flagrant, characteristic of a pirate, and an egregious case of misconduct beyond typical infringement such that Plaintiff is entitled under 35 U.S.C. § 284 to enhanced damages up to three times the amount found or assessed.

95.     MPV has been damaged as a result of Acer's infringing conduct described in this Count. Acer is, thus, liable to MPV in an amount that adequately compensates MPV for Acer's infringements, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

<strong><u>COUNT V</u></strong>

(INFRINGEMENT OF U.S. PATENT NO. 8,847,972)

96.     Plaintiff incorporates paragraphs 1 through 95 herein by reference.

97.     MPV is the assignee of the '972 patent, entitled "Adapting Display Color for Low Luminance Conditions" with ownership of all substantial rights in the '972 patent, including the right to exclude others and to enforce, sue, and recover damages for past and future infringements.

98.     The '972 patent is valid, enforceable, and was duly issued in full compliance with Title 35 of the United States Code. The '972 patent issued from U.S. Patent Application No. 12/690,150.

99.     Acer has and continues to directly and/or indirectly infringe (by inducing infringement) one or more claims of the '972 patent in this judicial district and elsewhere in Texas and the United States.

100.    On information and belief, Acer designs, develops, manufactures, assembles and markets computers, projectors, and other devices configured to adjust display color for low

luminance conditions. The Accused Products include, for example, Acer projectors with Acer LumiSence, such as the Acer S series.

101.    Acer directly infringes the '972 patent via 35 U.S.C. § 271(a) by making, offering for sale, selling, and/or importing those Accused Products, their components and processes, and/or products containing the same that incorporate the fundamental technologies covered by the '972 patent to, for example, its alter egos, agents, intermediaries, distributors, importers, customers, subsidiaries, and/or consumers. Furthermore, on information and belief, Acer sells and makes the Accused Products outside of the United States, delivers those products to its customers, distributors, and/or subsidiaries in the United States, or in the case that it delivers the Accused Products outside of the United States it does so intending and/or knowing that those products are destined for the United States and/or designing those products for sale in the United States, thereby directly infringing the '972 patent. *See, e.g., Lake Cherokee Hard Drive Techs., L.L.C. v. Marvell Semiconductor, Inc.*, 964 F. Supp. 2d 653, 658 (E.D. Tex. 2013). Furthermore, Acer directly infringes the '401 patent through its direct involvement in the activities of its subsidiaries, including Acer America Corporation, including by selling and offering for sale the Accused Products directly to such subsidiaries and importing the Accused Products into the United States for such subsidiaries. Such subsidiaries conduct activities that constitute direct infringement of the '972 patent under 35 U.S.C. § 271(a) by making, offering for sale, selling, and/or importing those Accused Products. For example, and on information and belief, Acer offers for sale, sells, and imports the Accused Products within the U.S. to, for example, its distributors, customers, subsidiaries, importers, and/or consumers. Further, Acer is vicariously liable for this infringing conduct of its U.S.-based sales subsidiaries, e.g., Acer America Corporation, (under both the alter ego and agency theories) because, as an example and on information and belief, Acer and Acer

America Corporation are essentially the same company, and Acer has the right and ability to control its subsidiaries infringing acts and receives a direct financial benefit from the infringement of its U.S.-based sales subsidiaries.

102.    For example, Acer infringes claim 30 of the '972 patent via the Accused Products. The Accused Products perform "determining, by a processor, an ambient light value." For example, Acer's projectors with Acer LumiSense (e.g., Acer S series) contain a processor that determines the brightness of a projection environment ("an ambient light value") using an embedded ambient light sensor, as shown below.

 

https://manuals.plus/m/eb4d5acc085c232c28bb7b28c4042ab286589b6a4b4eb089356383a8bfb43cd7

Acer America today announced the U.S. availability of the 3,200 lumens Acer H6502BD home entertainment projector with LumiSense+ intelligent color enhancement. LumiSense+ features an embedded light sensor that detects ambient light conditions to optimize projected image brightness levels and color saturation. Leveraging clever content-aware technology, it analyzes projected content frame by frame and dynamically adjusts image visibility to the ideal level.

https://www.acer.com/ac/en/US/press/2016/207018

103.    The Accused Products perform "determining, by the processor, a displayed image brightness value." For example, Acer's projectors with LumiSense determine the projected image brightness ("displayed image brightness value"), as shown below.



**Acer LumiSense**

Acer LumiSense technology uses an ambient light sensor to detect brightness in the projection environment and adjust brightness and color saturation accordingly. In addition, Acer LumiSense also analyzes the projected image and dynamically optimizes the quality of the displayed image.

https://manuals.plus/m/eb4d5acc085c232c28bb7b28c4042ab286589b6a4b4eb089356383a8bfb43cd7

Acer America today announced the U.S. availability of the 3,200 lumens Acer H6502BD home entertainment projector with LumiSense+ intelligent color enhancement. LumiSense+ features an embedded light sensor that detects ambient light conditions to optimize projected image brightness levels and color saturation. Leveraging clever content-aware technology, it analyzes projected content frame by frame and dynamically adjusts image visibility to the ideal level.

https://www.acer.com/ac/en/US/press/207018

104.    The Accused Products perform "tracking, by the processor, a luminance condition history." For example, Acer projectors with Acer ColorSafe track the color and brightness of the displayed image over time ("luminance history") in order to preserve color fidelity, as shown below.



https://www.acer.com/ac/en/GB/content/professional-model/MRJR911.002



https://www.youtube.com/watch?v=hC-0ShfalHU&t=112s&ab_channel=Acer



**Acer Color Safe II**

Acer ColorSafe II guarantees consistent, brilliant and natural color projection throughout the life of the projector. This is ensured by the use of DLP® technology and a 5-year warranty on the DLP® chip. Projectors without DLP® technology experience a decrease in colour brilliance over time.

https://manuals.plus/m/eb4d5acc085c232c28bb7b28c4042ab286589b6a4b4eb089356383a8bfb43cd7

Acer ColorSafe technology combines the Digital Micromirror Device (DMD, the chip at the heart of DLP technology) and dynamic RGB control techniques that prevents yellow hues, the sign of color delay, so that color fidelity is preserved even after prolonged usage. In addition, Acer uses high-grade projector lamps to extend the projectors' lifespan.

https://www.acer.com/ac/en/IN/press/81166

105.   The Accused Products perform "determining, by the processor, low luminance conditions based at least in part on the ambient light value and the displayed image brightness value." For example, Acer projectors determine when brightness correction is needed (e.g., "low luminance conditions") based in part on ambient light, as well as the brightness of the displayed image, as shown below.







106.   The Accused Products perform "determining, by the processor, changes in color appearance to be applied to displayed images based at least in part on the determined low luminance conditions, the luminance condition history, and a color appearance model of human vision that encompasses at least photopic and mesopic viewing conditions, wherein the color appearance relates to color perception by a human." For example, Acer projectors determine the necessary adjustments to the RGB levels, brightness, and color saturation ("changes in color appearance") of the projected images, based at least in part on the low luminance conditions determined by LumiSense and the luminance condition history as determined by ColorSafe, to display "natural" color images as seen by the human eye ("relates to color perception by a human"), as shown below.

**Acer Color Safe II**



Acer ColorSafe II guarantees consistent, brilliant and natural color projection throughout the life of the projector. This is ensured by the use of DLP® technology and a 5-year warranty on the DLP® chip. Projectors without DLP® technology experience a decrease in colour brilliance over time.

**Acer LumiSense**



Acer LumiSense technology uses an ambient light sensor to detect brightness in the projection environment and adjust brightness and color saturation accordingly. In addition, Acer LumiSense also analyzes the projected image and dynamically optimizes the quality of the displayed image.

https://manuals.plus/m/eb4d5acc085c232c28bb7b28c4042ab286589b6a4b4eb089356383a8bfb43cd7

107. The Accused Products perform "applying, by the processor, the changes in the color appearance to image data by altering the image data for the displayed images." For example, Acer projectors apply changes in color appearance to image data by altering the RGB levels, brightness, and color saturation of the projector output ("altering the image data for the displayed images"), as shown below.

 

https://www.acer.com/ac/en/GB/content/professional-model/MR.JR911.002

108.    The technology discussion above and the exemplary Accused Products provide context for Plaintiff's allegations that each limitation of claim 30 is met.

109.    At a minimum, Acer has known of the '972 patent at least as early as the filing date of the Complaint. In addition, Acer has known of the '972 patent and its infringement at least as early as December 29, 2021, when it received correspondence from MPV providing notice of its infringement of the '972 patent. In addition, Acer has known of the '972 patent at least as early as March 28, 2019, when MPV contacted Acer regarding its patent portfolio, including the '972 patent. On information and belief, Acer examined the MPV patent portfolio, including the '972 patent.

110.    Prior to the filing of the Complaint, Acer knew or should have known of the '972 patent, and knew or should have known that they infringed the '972 patent's claims. Indeed, at a minimum, they exercised willful blindness to the existence of the '972 patent and took deliberately wrongful steps to ignore their infringement of the '972 patent.

43

111.    On information and belief, since at least the above-mentioned date when Acer was on notice of its infringement, Acer has actively induced, under U.S.C. § 271(b), its distributors, customers, subsidiaries, importers, and/or consumers that import, purchase, or sell the Accused Products that include or are made using all of the limitations of one or more claims of the '972 patent to directly infringe one or more claims of the '972 patent by using, offering for sale, selling, and/or importing the Accused Products. Since at least the notice provided on the above-mentioned date, Acer does so with knowledge, or with willful blindness of the fact, that the induced acts constitute infringement of the '972 patent. Acer intends to cause, and has taken affirmative steps to induce infringement by its distributors, importers, customers, subsidiaries, and/or consumers by at least, *inter alia*, creating advertisements that promote the infringing use of the Accused Products, creating and/or maintaining established distribution channels for the Accused Products into and within the United States, manufacturing the Accused Products in conformity with U.S. laws and regulations, distributing or making available instructions or manuals for these products to purchasers and prospective buyers, testing and certifying features related to adjusting display color for luminance in the Accused Products, and/or providing technical support, replacement parts, or services for these products to these purchasers in the United States. As noted above, this includes, but is not limited to, the collective willful blindness of the Acer Group, including their singular and collective refusal to investigate whether the Accused Products infringe the '972 patent.

112.    On information and belief, despite having knowledge of the '972 patent and knowledge that it is directly and/or indirectly infringing one or more claims of the '972 patent, Acer has nevertheless continued its infringing conduct and disregarded an objectively high likelihood of infringement. Acer's infringing activities relative to the '972 patent have been, and continue to be, willful, wanton, malicious, in bad-faith, deliberate, consciously wrongful, flagrant,

characteristic of a pirate, and an egregious case of misconduct beyond typical infringement such that Plaintiff is entitled under 35 U.S.C. § 284 to enhanced damages up to three times the amount found or assessed.

113.    MPV has been damaged as a result of Acer's infringing conduct described in this Count. Acer is, thus, liable to MPV in an amount that adequately compensates MPV for Acer's infringements, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## CONCLUSION

114.    Plaintiff MPV is entitled to recover from Acer the damages sustained by Plaintiff as a result of Acer's wrongful acts, and willful infringement (including its willful blindness of infringement), in an amount subject to proof at trial, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court.

115.    Plaintiff has incurred and will incur attorneys' fees, costs, and expenses in the prosecution of this action. The circumstances of this dispute may give rise to an exceptional case within the meaning of 35 U.S.C. § 285, and Plaintiff is entitled to recover its reasonable and necessary attorneys' fees, costs, and expenses.

## JURY DEMAND

116.    Plaintiff hereby requests a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure.

## PRAYER FOR RELIEF

117.    Plaintiff respectfully requests that the Court find in its favor and against Acer, and that the Court grant Plaintiff the following relief:

1.  A judgment that Acer has infringed the Asserted Patents as alleged herein, directly and/or indirectly by way of inducing infringement of such patents;

2.  A judgment for an accounting of all damages sustained by Plaintiff as a result of the acts of infringement by Acer;

3.  A judgment and order requiring Acer to pay Plaintiff damages under 35 U.S.C. § 284, including up to treble damages as provided by 35 U.S.C. § 284, and any royalties determined to be appropriate;

4.  A judgment and order requiring Acer to pay Plaintiff pre-judgment and post-judgment interest on the damages awarded;

5.  A judgment and order finding this to be an exceptional case and requiring Acer to pay the costs of this action (including all disbursements) and attorneys' fees as provided by 35 U.S.C. § 285; and

6.  Such other and further relief as the Court deems just and equitable.

Dated: December 29, 2021                              Respectfully submitted,


                                                     /s/ *Patrick J. Conroy*
                                                     Patrick J. Conroy
                                                     Texas Bar No. 24012448
                                                     Jon Rastegar
                                                     Texas Bar No. 24064043
                                                     T. William Kennedy Jr.
                                                     Texas Bar No. 24055771
                                                     **Nelson Bumgardner Conroy PC**
                                                     2727 North Harwood Street
                                                     Suite 250
                                                     Dallas, TX 75201
                                                     Tel: (214) 446-4954
                                                     pat@nelbum.com
                                                     jon@nelbum.com
                                                     bill@nelbum.com

                                                     **Attorneys for Plaintiff**
                                                     **Monument Peak Ventures, LLC**